IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNA A. HALTERMAN                :        CIVIL ACTION
                                 :
        v.                       :
                                 :
TULLYTOWN BOROUGH, et al.        :        NO. 10-7166

MEMORANDUM

Dalzell, J.                                      June 14, 2011

        Plaintiff Anna A. Halterman ("Halterman") sues

defendants Tullytown Borough ("Tullytown") and Police Officer

Phillip Kulan ("Officer Kulan") in this suit arising out of

Halterman's June 1, 2010 arrest by Officer Kulan at a church fair

and her subsequent detention and prosecution for resisting arrest

and disorderly conduct.  Halterman alleges civil rights

violations under 42 U.S.C. § 1983 against both defendants, as

well as state law claims for assault, false arrest, abuse of

process, malicious prosecution, invasion of privacy and casting

in a false light, civil conspiracy, and intentional infliction of

emotional distress against Officer Kulan.

        Defendants have filed a partial motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6), to which Halterman has

responded.  For the reasons set forth below, we will grant

defendants' partial motion to dismiss but will grant Halterman

leave to amend so that she may address certain deficiencies we

identify in her complaint.

## I.  **Factual Background**

In evaluating a motion to dismiss under Rule 12(b)(6), we must "accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom." Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In deciding such motions, courts may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim," Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted), where such documents are "integral to or explicitly relied upon in the complaint." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis omitted).  Because Halterman has attached no exhibits to her complaint, we need only review the facts she alleges therein.

On June 1, 2010, Halterman allegedly attended a fair at the grounds of St. Michael the Archangel Roman Catholic Church in Levittown, Pennsylvania with two friends.  Pl.'s Compl. ¶¶ 2-3. At around 11:00 p.m. that evening, Halterman and her friend

Leeann Brittian waited in line to ride the "Ring of Fire," an amusement ride at the fair. Id. ¶ 4. Noticing that some of the teenaged fair-goers were garbed in "risque clothing," Halterman said to Brittian, who was standing a few feet away from her, that "[i]f my child ever came out of the house dressed like that, I would slap them in the fucking face." Id. ¶¶ 5-6.

Coincidentally enough, as Halterman made this critique, Officer Kulan, a Tullytown Borough police officer, walked between her and Brittian. Kulan then allegedly turned around, approached Halterman, and asked, "Can you watch your mouth?" Id. ¶¶ 6-8. Halterman assented, but also asked Kulan why he was "singling [her] out," noting that many others at the fair were using vulgar language. Id. ¶ 9. Officer Kulan asked Halterman to step out of line and Halterman protested, "Why? I didn't do anything." Id. ¶ 10. Kulan asked Halterman to step out of the line again, to which Halterman refused, but when Kulan repeated his request a third time, Halterman finally complied. Id. ¶¶ 11-12. Kulan asked for Halterman's age, which she supplied (twenty years), and her identification, which she asserted was in her friend's car. Id. ¶¶ 13-14. Kulan then twice asked Halterman for her name, and instead of answering the question, Halterman responded "Why?", or

"For what?", to which Kulan allegedly replied that he was "the authority." Id. ¶¶ 15-17.

Officer Kulan asked Halterman a third time for her name, and Halterman again declined to answer the question, instead explaining that "she works for the school district and wanted no trouble." Id. ¶ 18. In response, Halterman claims that Kulan grabbed her right arm, twisted it behind her back, and handcuffed her, in the process "hurting her right shoulder, which she had just strained while at ROTC training camp." Id. ¶ 19. Halterman began "crying," "screaming," telling Kulan "to get off her," and "repeatedly ask[ing] why he was arresting her," to which Kulan did not respond. Id. ¶ 20. Kulan called for back-up to assist him. A police officer on a bicycle approached and Officer Kulan allegedly asked him to see if he could find anyone willing to give a statement. Id. ¶¶ 22-23.

Officer Kulan then took Halterman -- still in handcuffs -- to his patrol car, where they encountered an unidentified white-shirted Tullytown Borough policeman, "appearing to be a higher rank". This policeman allegedly told Halterman to "shut her mouth," instructed Kulan to put her in the patrol car and take her to Bucks County Prison, and informed Halterman that she was "disrespectful" and "[w]e're not going to take this from

kids." Id. ¶¶ 24-25. Officer Kulan did not take Halterman to

Bucks County Prison, but instead to the Tullytown Borough police

station where he placed Halterman in a jail cell in which she

languished "for hours." Id. ¶ 26. While in her cell, Halterman

was allegedly subjected to a number of indignities: Officer

Kulan "interrogated her three (3) times about whether she was 'on

drugs', showed her a picture of her he had obtained and confirmed

her name and address, took cigarettes from her and threw them

out, gave her a breathalyzer test (which she passed) and told her

that she 'should know how to talk to authority.'" Id. ¶ 27.

Kulan next took Halterman to be arraigned before a

district justice in Levittown. En route to the arraignment,

Halterman heard Kulan "speaking on the cell phone, and heard him

speak to an unknown person on his cell phone, asking said person

to lie on his behalf." Id. ¶ 30. At the arraignment, Kulan

filed charges against Halterman for resisting arrest in violation

of 18 Pa. Cons. Stat. Ann. § 5104 and disorderly conduct in

violation of § 5503(a)(3)-(4). According to Halterman, the

arraigning judge characterized these charges as "nonsense." Id.

¶¶ 31-32. Halterman pled not guilty to the charges and retained

a lawyer. Ultimately, a judge of the Bucks County Court of

Common Pleas dismissed the charges. Id. ¶ 35.

## II.  **Analysis**

Halterman asserts four counts against the defendants:
(1) "federal civil rights violations", id. ¶¶ 51-92; (2) "federal
civil rights violations" against "defendant Tullytown," id. ¶¶
93-102; (3) "federal civil rights violations -- demand for
punitive and other damages" against Officer Kulan, id. ¶¶ 103-
106; and (4) "supplemental state claims" against Kulan, id. ¶¶
107-111.  Defendants correctly note that "the Pennsylvania
Supreme Court has expressly stated that punitive damages are not
an independent cause of action," Defs.' Mem. in Supp. Partial
Mot. Dismiss Compl. ("Defs.' Mem.") at 9, and Halterman "agree[s]
to withdraw the separate count claiming punitive damages, since
those damages are claimed in the ad damnum clauses of Counts I
and IV of the Complaint."  Pl.'s Mem. in Opp'n to Def.'s MTD
("Pl.'s Mem.") at 6.  We will accordingly dismiss Count III of
Halterman's complaint.

As a quick glance at the "counts" listed above reveals,
Halterman has not matched her counts with her claims, instead
leaving the defendants and the Court to identify the claims
advanced in her jumbled pleading.  It appears that she has
actually presented nine distinct claims: (1) civil rights
violations by Kulan in his individual capacity under 42 U.S.C. §

1983, based on claims of false arrest, malicious prosecution, falsifying police records, use of unnecessary and unreasonable force, and deprivation of access to the courts, Pl.'s Compl. ¶¶ 52, 88; (2) civil rights violations by Tullytown Borough under 42 U.S.C. § 1983 "for deprivation by its agents, servants, workmen and/or employees of their constitutional rights," id. ¶ 94; and state law claims against Kulan in his individual capacity for (3) assault, id. ¶ 108; (4) false arrest, id.; (5) abuse of process, id.; (6) malicious prosecution, id.; (7) invasion of privacy and casting in a false light, id.; (8) intentional infliction of emotional distress; id. and (9) conspiracy "to commit and/or cover up acts." id. ¶ 109. In their partial motion to dismiss, defendants urge the dismissal of (1) Halterman's federal claim against Kulan as to the ground of deprivation of access to the courts as well as her state law claims for (2) invasion of privacy and casting in a false light, (3) conspiracy, and (4) intentional infliction of emotional distress. Defs.' Mot. Summ. J. ("Defs.' MSJ") ¶ 28.

Regarding a motion under Fed. R. Civ. P. 12(b)(6), our Court of Appeals has recently rehearsed that "[t]he test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, [the]

7

plaintiff may be entitled to relief," <u>Kundratic v. Thomas</u>, 2011
WL 208636, at *1 (3d Cir. 2011) (brackets in original) (quoting
<u>Holder v. City of Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993)),
where "the defendant bears the burden of showing that no claim
has been presented." <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir.
2005). "[A] complaint's 'factual allegations must be enough to
raise a right to relief above the speculative level,'" <u>Ideen v.
Straub</u>, 385 Fed. Appx. 123, 124 (3d Cir. 2010) (quoting <u>Bell
Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)), and "must
not be 'so undeveloped that [the complaint] does not provide a
defendant the type of notice of claim which is contemplated by
[Fed. R. Civ. P. 8]." <u>Umland v. PLANCO Fin. Servs., Inc.</u>, 542
F.3d 59, 64 (3d Cir. 2008) (quoting <u>Phillips v. Cty. of
Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)). Thus, a pleading
may not simply offer "labels and conclusions," <u>Twombly</u>, 550 U.S.
at 555, and "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."
<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Moreover, "only
a complaint that states a plausible claim for relief survives a
motion to dismiss." <u>Id.</u> at 1950. This standard is not as
demanding as a "probability requirement," but a plaintiff must
allege facts sufficient to show that there is "more than a sheer

8

possibility that a defendant has acted unlawfully." Id. at 1949
(internal quotation marks omitted).

We will first examine defendants' arguments as to the
claims in Halterman's complaint that they ask us to dismiss. We
will then identify certain other deficiencies in the complaint.

### A. **Deprivation of Access to the Courts**

Defendants contend that "[p]laintiff fails to provide
factual averments that the Moving Defendants either prevented her
from pursuing a separate cause of action in court or hindered her
defense in the underlying criminal proceeding," so that "this
claim must be dismissed with prejudice." Defs.' Mem. at 8.
Halterman responds that "an individual does have a constitutional
right to pursue the defense of her criminal case in a court of
law without fear of retaliation or intimidation," Pl.'s Mem. at
8, and that "[t]he Defendant Police officer's prosecution of
these false charges (not merely the filing of them) was in
retaliation for her attempt to exercise her rights and in
retaliation for the perceived lack of respect the police officer
received from Plaintiff." Id. at 9. Halterman further explains
that she "has also incurred a palpable and actual injury to a
property interest, i.e. her hard earned money." Id.

While claims for deprivation of access to the courts are generally brought by plaintiffs seeking to prosecute claims while incarcerated, see, e.g., Burnside v. Moser, 138 Fed. Appx. 414 (3d Cir. 2005); Lewis v. Casey, 518 U.S. 343 (1996), such a cause of action is available to any plaintiff. See, e.g., Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 785 (E.D. Pa. 1999) (Brody, J.) ("[T]here is a due process right under the Fourteenth Amendment, which precludes state actors 'from preventing individuals from obtaining access to the civil courts.'") In such cases, a plaintiff must "show that he was actually injured by the Defendants' alleged interference with his access to the courts," Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997), and that "the defendant reasonably should have known that the act he intentionally performed would deprive the plaintiff of his right to court access." Johnson v. Miller, 925 F. Supp. 334, 344 (E.D. Pa. 1996) (Pollak, J.).

Applying this test to Halterman's claim, it is evident that she has not alleged any "interference with [her] access to the courts." Oliver, 118 F.3d at 177. While Halterman asserts that Kulan filed false charges against her in retaliation for her coarse language and perceived lack of respect toward him, she makes no allegation that Kulan engaged in further conduct aimed

at discouraging her from defending herself in her criminal case
or bringing this civil case.  In the absence of such retaliation
or other interference, Halterman's claim for deprivation of
access to the courts must fail.  We will accordingly dismiss
Count I as to this ground.

**B.**     <u>**Invasion of Privacy and Casting in a False Light**</u>

Defendants argue that "[p]laintiff baldly asserts that
Moving Defendant Kulan invaded her privacy and casted [<u>sic</u>] her
in a false light without providing any factual support for this
allegation.  There is no evidence or any allegations anywhere in
the Complaint that there was a widely publicized false statement
regarding Plaintiff."  Defs.' Mem. at 10.  Halterman responds
that "[t]he element of publicity has been established where facts
were disclosed to as few as seventeen individuals," Pl.'s Mem. at
12, and that "at least seventeen people . . . were present at the
fair, with others present in the courtroom" when Halterman was
arraigned.  <u>Id.</u> at 13.  She further avers that "criminal charges
filed in Tullytown municipal courts are published in the police
blotters of local newspapers.  Again, Plaintiffs [<u>sic</u>] submit
that at least seventeen persons read these charges."  <u>Id.</u>

As our Court of Appeals has noted, "'[a]n action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light.'" Kline v. Security Guards, Inc., 386 F.3d 246, 259-60 (3d Cir. 2004) (quoting Harris v. Easton Publ'g Co., 483 A.2d 1377, 1383 (Pa. 1984)). Pennsylvania courts have adopted the definition of the tort of invasion of privacy/false light set out in the Restatement (Second) of Torts, Vogel v. W.T. Grant Co., 327 A.2d 133, 135-36 (Pa. 1974), which provides that

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E. Thus, a "'false light' claim requires an allegation that 'highly offensive false statement was publicized by [the defendant] with knowledge or in reckless disregard of the falsity.'" Vurimindi v. Fuqua School of Business, 2010 WL 3419568, at *8 n.15 (E.D. Pa. 2010) (quoting Santillo v. Reedel, 634 A.2d 264 (Pa. Super. 1993)).

12

Without reaching the question of whether Kulan truly
gave "publicity to a matter," by arresting Halterman in public
and filing criminal charges against her that were ultimately
recorded in a police blotter in the local paper, it is apparent
that Halterman has simply not alleged, in anything other than
conclusory fashion, that Kulan made any false statements about
her.  While Halterman alleges that Officer Kulan "wrongly accused
her of criminal misconduct" and "officially prosecuted the false
charges in court," Pl.'s Mem. at 12, she identifies no false
statements Kulan made either during her arrest or during the
later proceedings against her.  As for the charges filed against
her, we simply cannot construe such charges to be "factual
statements".  While such charges may be <u>supported</u> by factual
statements, by themselves they merely constitute propositions
regarding liability to be tested in a court.  Just as Halterman's
causes of action against Kulan are not factual statements -- such
that Halterman will not be liable for invasion of privacy and
casting in a false light merely because we dismiss one of her
claims -- so the charges filed against her do not, by themselves,
give rise to a claim for invasion of privacy.

Because Halterman offers no "factual allegations . . .
[that] raise a right to relief above the speculative level,"

Ideen, 385 Fed. Appx. at 124, in support of her invasion of

privacy/false light claim, we will dismiss Count IV of her

complaint insofar as it rests on this state law claim.


      **C.**    **Conspiracy**

      With regard to Halterman's conspiracy claim, defendants

assert that "[t]here is no allegation of an agreement between

Moving Defendant Kulan and the unidentified Tullytown Borough

police officer(s) to commit any unlawful acts against Plaintiff."

Defs.' Mem. at 11. Halterman counters that

> The very fact that Defendant KULAN was on the
> phone asking another to lie to back him up is
> allegation enough to show conspiracy,
> especially since Plaintiff will testify that,
> from what she could discern from hearing one
> end of the conversation, it sounded like the
> person on the other end of the call agreed to
> lie to back Defendant KULON [sic], and that
> Plaintiff was mentioned in the same phone
> conversation.

Pl.'s Mem. at 13. Halterman further submits that "if the Court

should decide further detail in pleading is necessary, then

Plaintiff requests an opportunity to amend the Complaint." Id.

      As Judge Baylson has explained, "[t]o prove a civil

conspiracy under Pennsylvania law, a plaintiff must show the

following elements: (1) a combination of two or more persons

acting with a common purpose to do an unlawful act or to do a

lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." <u>Doltz v. Harris & Assocs.</u>, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003). Defendants correctly note that Halterman's complaint alleges no facts supporting the existence of an understanding between Kulan and another "to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose," <u>id.</u> The complaint merely alleges that Halterman heard Kulan "speak to an unknown person on his cell phone, asking said person to lie on his behalf," Pl.'s Compl. ¶ 30, not that any <u>agreement</u> was reached. Halterman attempts to aver additional facts in her response to defendants' motion to dismiss and seeks leave to amend the complaint to include such facts, but it is hard to imagine more threadbare factual allegations. Essentially, Halterman alleges that from what she could hear of Kulan's conversation it sounded like an agreement was reached -- but she offers no specific details supporting this conclusion. Without these details, Halterman has done little more than assert "it sounded like" an element of her claim was met, which is tantamount to merely asserting that the element was met. Although it seems pointless to permit Halterman to amend her complaint to include such an effectively conclusory allegation,

given the early stages of this matter, we will afford her another

bite at what seems a bad apple.[1]

### D. **Intentional Infliction of Emotional Distress**

Defendants argue that "[p]laintiff's claim for

intentional infliction of emotional distress is devoid of any

factual allegations sufficient to constitute extreme and

outrageous conduct." Defs.' Mem. at 13. Halterman disagrees,

recounting "that she was exercising her First Amendment right of

free speech when Defendant KULON [sic] arrested her without legal

basis, falsified police records, intentionally exaggerated and

trumped up said charges, acted maliciously and without probable

cause, and did so motivated by the desire to punish Plaintiff for

exercising her rights," Pl.'s Mem. at 14-15, and contending that

"[i]t cannot seriously stated [sic] that such conduct, if proven

is not extreme and outrageous." Id. at 15.

---

[1] It bears noting that Halterman has not alleged that
anyone took any overt act in furtherance of an agreement to lie
on Kulan's behalf. As we have already noted, Halterman has not
even identified any false statements that Kulan made; she has
certainly pointed to no such statements made by anyone else in
the course of her arrest or prosecution. Because Halterman has
failed to present a factual basis supporting two of the requisite
elements of a civil conspiracy claim, absent more flesh on this
bone Count IV of her complaint will be dismissed to the extent it
advances such a claim.

As our Court of Appeals has explained, a claim for intentional infliction of emotional distress ("IIED") in Pennsylvania has four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979). To recover for IIED, a plaintiff must show that the defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting Buczek v. First National Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

Although Officer Kulan's alleged conduct was boorish and unprofessional, we cannot say it was "beyond all possible bounds of decency." Id. Outrageousness occurs in Pennsylvania jurisprudence only where "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 177 (Pa. Super. 1996). Average members of our community would

17

not so exclaim upon learning that Halterman used vulgarity in public, repeatedly declined to follow a police officer's instructions, and was consequently arrested, detained, and charged with minor offenses -- as Halterman readily admits.

IIED in Pennsylvania is a tort reserved for the most extreme ranges of behavior. In <u>Chuy</u>, for example, our Court of Appeals affirmed an entry of judgment in favor of a plaintiff where the defendant's team physician had falsely informed the media (and thus, the plaintiff) that the plaintiff suffered from a fatal disease, leading to plaintiff's panic and despondency. 595 F.2d at 1269. <u>See</u> <u>also</u> <u>Papieves v. Lawrence</u>, 263 A.2d 118 (Pa. 1970) (overruling dismissal of complaint on demurrer where complaint alleged that defendant's automobile struck and killed plaintiffs' son and the defendant, without notifying plaintiffs, then hid the body and later buried it in a makeshift grave). The conduct that Halterman alleges on Officer Kulan's part simply does not approach this level of outrageousness. We will thus dismiss Count IV with respect to Halterman's IIED claim.

### E.  **Tullytown Borough's Municipal Liability**

Having largely granted defendants' partial motion to dismiss, we now turn to deficiencies in Halterman's complaint

that have become apparent to us but were not identified in defendants' motion.

Halterman asserts in Count II of her complaint against Tullytown Borough "deprivation by its agents, servants, workmen and/or employees of their constitutional rights within the meaning of 42 U.S.C. § 1983." Pl.'s Compl. ¶ 94. Halterman predicates this assertion of liability on the claims that (1) Officer Kulan, as an agent of Tullytown, violated her constitutional rights, id. ¶ 95; (2) Tullytown failed to train its officers "in the proper methods for dealing constitutionally with members of the public and non-perpetrator citizens," id. ¶ 96; (3) Tullytown's agents "have a history of threatening, assaulting, falsely accusing and prosecuting and physically using unreasonable physical force on innocent citizens," id. ¶ 97; (4) Tullytown "permitted, tolerated and overlooked and/or approved the constitutional violations of citizens by officers of its police department," id. ¶ 99; and (5) Tullytown has "encouraged, tolerated, ratified, and has been deliberately indifferent to the . . . patterns, practices and customs" of illegal behavior by its agents. Id. ¶ 102.

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), "a local government may not be sued under § 1983 for an

injury inflicted solely by its employees or agents. Instead, it

is when execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts the injury that

the government as an entity is responsible under § 1983." Our

Court of Appeals has summarized the jurisprudence on this point:

> A government policy or custom can be
> established in two ways. Policy is made when
> a decisionmaker possessing final authority to
> establish municipal policy with respect to
> the action issues an official proclamation,
> policy, or edict. A course of conduct is
> considered to be a custom when, though not
> authorized by law, such practices of state
> officials are so permanent and well settled
> as to virtually constitute law.

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)

(brackets and internal quotation marks omitted). It is not

enough "for a § 1983 plaintiff merely to identify conduct

properly attributable to the municipality. The plaintiff must

also demonstrate that, through its deliberate conduct, the

municipality was the 'moving force' behind the injury alleged."

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404

(1997) (emphasis in original). Where "the policy in question

concerns a failure to train or supervise municipal employees,

liability under section 1983 requires a showing that the failure

20

amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." <u>Carter v. City of Phila.</u>, 181 F.3d 339, 357 (3d Cir. 1999). And as the Supreme Court recently emphasized, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011).

Since <u>respondeat</u> <u>superior</u> liability may not be the basis for a § 1983 claim against a municipality, the first ground that Halterman asserts as the basis for her claim against Tullytown -- that Officer Kulan violated her constitutional rights -- is inadequate, and we thus need not further consider it. But Halterman's other grounds come closer to satisfying <u>Monell</u> since they each allege a policy of (1) failing to train Tullytown employees in constitutional methods of dealing with citizens, or (2) failing to supervise such employees and discipline them when they commit constitutional violations.

If these other grounds come closer to establishing <u>Monell</u> liability, however, they still fall short. All of Halterman's allegations as to Tullytown policy are conclusory. Halterman's claims as to Tullytown's failure to train or supervise its employees include <u>no</u> factual details as to

Tullytown's training programs, the history of cognate violations
allegedly committed by its employees, or Tullytown's supposed
failure to respond to these violations with discipline.
Halterman thus fails to provide "enough facts to raise a
reasonable expectation that discovery will reveal evidence of the
necessary element." Phillips, 515 F.3d at 234 (internal
quotation marks omitted). Instead, it appears that Halterman has
merely imagined what types of training deficiencies or failures
to discipline might support municipal liability in the present
case and then asserted that these deficiencies and failures
indeed exist. She thus on the complaint as drafted fails to
state a cause of action against Tullytown as a municipality for
violation of § 1983.

It has not escaped our attention that defendants did
not raise Halterman's failure to state a claim against Tullytown
in their partial motion to dismiss. "Sua sponte dismissal of a
claim is disfavored and inappropriate unless the basis for
dismissal is apparent from the face of the complaint," Giles v.
Volvo Trucks N. Am., 551 F. Supp. 2d 359, 369 (M.D. Pa. 2008)
(Kane, C.J.) (citing Ray v. Kertes, 285 F.3d 287, 297 (3d Cir.
2002)), and "[b]efore sua sponte dismissal is appropriate . . . a
Court must give a plaintiff notice and an opportunity to be heard

on the legal viability of his complaint." <u>Id.</u> (citing <u>Dougherty</u>

<u>v. Harper's Magazine Co.</u>, 537 F.2d 758, 761 (3d Cir. 1976)).  We

will thus give Halterman ten days to provide specific factual

allegations supporting her allegations of municipal liability

against Tullytown under § 1983.


BY THE COURT:


__\s\Stewart Dalzell

23